**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JEWELL RYAN-WHITE,<br><br>              Plaintiff,<br><br>     v.<br><br>REBECCA BLANK,<br>*Acting United States Secretary of Commerce*,<br><br>              Defendant. | Civil Action No. 12-177 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The plaintiff, Jewell Ryan-White, brings this employment discrimination action against the defendant, Acting United States Secretary of Commerce Rebecca Blank, in her official capacity pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* The plaintiff alleges that the defendant agency retaliated against her for making contact with the Equal Employment Office ("EEO"), which is statutorily protected activity. Pending before the Court is the defendant's motion to dismiss or, in the alternative, motion for summary judgment.

**I.    BACKGROUND**

In October 2008, the plaintiff was hired by the defendant as a Partnership Data Services Coordinator ("Partnership Coordinator") with the Philadelphia Regional Census Center to perform work related to the 2010 Census. Compl. ¶ 8, ECF No. 1. The plaintiff's tenure as a Partnership Coordinator was pursuant to a "Mixed Tour work schedule," under which "Census employees could be changed from full-time, part-time, and intermittent schedules to accommodate fluctuating workloads and duty assignments." *Id.* ¶ 19. Under the terms of the plaintiff's 2008 initial appointment, her employment "was Not to Exceed ('NTE') two years or until September 30, 2010," though "this initial term could be extended for an additional two

1

years or until September 30, 2012." *Id.* During the period of her employment, the plaintiff was supervised by three individuals: Fernando Armstrong (Regional Director of the Philadelphia office), Theodore Roman (Deputy Regional Director of the Philadelphia office), and Allison Assanah-Carroll (Assistant Regional Census Manager). *See id.* ¶¶ 6–7, 12.[1]

On October 14, 2009, after beginning work with the Philadelphia Census office, the plaintiff was relocated to the District of Columbia Partnership office. *Id.* ¶ 13. After this transfer occurred, the plaintiff alleges that she "became increasingly concerned about numerous . . . instances of disparate treatment by Mr. Armstrong and Mr. Roman." *Id.* ¶ 14. In particular, between October 2009 and March 2010, the plaintiff alleges that she was discriminated against by Messrs. Armstrong and Roman by, *inter alia*, being "subjected to unwarranted criticism and threats of disciplinary action." *Id.* ¶¶ 13–16. As a result of this perceived discriminatory conduct, the plaintiff "sent a grievance complaining of discrimination by Mr. Armstrong and Mr. Roman" to a superior official in the Census Bureau and subsequently "made initial contact with an EEO Counselor on March 23, 2010." *Id.* ¶ 17. The plaintiff alleges that she submitted a formal EEO complaint on April 26, 2010, and the EEO accepted her claims on June 11, 2010. *Id.* ¶¶ 17, 25.

On June 3, 2010, the plaintiff claims that "Mr. Armstrong and Mr. Roman issued a Retention of Staff list," which included the plaintiff's name as "one of the employees selected to be retained by the [Commerce Department] through at least September 2010." *Id.* ¶ 18. Additionally, the plaintiff alleges that she was "assigned an important project" on June 15, 2010 that "upon information and belief, would have resulted in the extension of her appointment." *Id.* ¶¶ 21–22. Specifically, the plaintiff says that she was selected to the "Integrated Partner Contact

---

[1] The plaintiff is an African American female, Mr. Armstrong is a white Hispanic male, and Mr. Roman is a Caucasian male. *See* Compl. ¶¶ 4, 6–7.

Database ('IPCD') project," which "reconcile[d] Partner contact information into a central database to ensure accurate and complete information for thousands of Partners across the United States." *Id.* ¶ 22.  The plaintiff also claims that, on July 1, 2010, she was assigned "to the Partnership Debriefing Conference to be held in Seattle, Washington from August 15–20, 2010," which "was a core forum intended to identify processes utilized during the most current Decennial Census, highlight best practices, and begin preparation for the next Decennial Census." *Id.* ¶ 24.

On July 7, 2010, however, the plaintiff alleges that "Mr. Roman directed Ms. Assanah-Carroll to notify [the plaintiff] that she was being converted from regular Full-Time Partnership Coordinator status to Intermittent status effective July 30, 2010." *Id.* ¶ 25.  According to the plaintiff, the conversion to intermittent status "had a significant impact on the terms and conditions of her employment" because she "went from being a full-time employee with benefits to a non-paid employee with no benefits and no work." *Id.* ¶ 29.  In other words, the plaintiff's "employment effectively terminated on the date her status was converted to Intermittent." *Id.* The plaintiff claims that "[t]he [Commerce Department] and the responsible management officials, including Mr. Roman and Mr. Armstrong, were aware of [the plaintiff's] protected activities," *id.* ¶ 56, and therefore the plaintiff alleges that the defendant "converted [the plaintiff's] status to Intermittent on July 7, 2010, effective July 30, 2010, in retaliation for her protected activities," *id.* ¶ 57.

The plaintiff filed her Complaint in the instant action on February 2, 2012, alleging three causes of action.  The first two causes of action allege that the defendant discriminated against her on the basis of sex and race by denying her request to correct a pay disparity.  *See* Compl. ¶¶ 33–52.  These two causes of action, however, have been voluntarily dismissed by the plaintiff

and are no longer at issue in this case. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. ("Pl.'s Opp'n") at 4 n.1, ECF No. 13.  The third cause of action alleges that the defendant retaliated against the plaintiff for engaging in statutorily protected activity, in violation of Title VII.  *See* Compl. ¶¶ 53–62.  Currently pending before the Court is the defendant's motion to dismiss or, in the alternative, motion for summary judgment.  For the reasons discussed below, the Court denies the defendant's motion.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* FED. R. CIV. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  Instead, the complaint must plead facts that are more than "'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557).  "[T]he plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *accord Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  The Court "must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21*.

*November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (citations and internal quotation marks omitted).[2]

### B. Conversion to Motion for Summary Judgment

The Federal Rules of Civil Procedure provide that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment," and if a motion is so converted, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). "The decision to convert a motion to dismiss into a motion for summary judgment is committed to the sound discretion of the trial court." *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006). "In exercising this discretion, the 'reviewing court must assure itself that summary judgment treatment would be fair to both parties.'" *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 85–86 (D.D.C. 2012) (quoting *Tele-Commc'ns of Key W., Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985)). Therefore, "[i]n converting the motion, district courts must provide the parties with notice and an opportunity to present evidence in support of their respective positions." *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011).

If extra-pleading evidence "is comprehensive and will enable a rational determination of a summary judgment motion," a district court will be more likely to convert to summary judgment, but "when it is scanty, incomplete, or inconclusive," the district court is more likely to decline to convert to summary judgment and permit further discovery. *See* 5C CHARLES ALAN WRIGHT, *et al.*, FEDERAL PRACTICE & PROCEDURE ("WRIGHT & MILLER") § 1366 (3d ed. 2012). Thus, there is no bright-line threshold for conversion under Rule 12(d); the touchstone is fairness and whether consideration of summary judgment is appropriate, in light of the nature of the

---

[2] The plaintiff cites the more lenient standard governing motions to dismiss under Rule 12(b)(6) set forth in *Conley v. Gibson*, 355 U.S. 41, 47 (1957). *See* Pl.'s Opp'n at 9. The Supreme Court, however, has "abrogated the *Conley* formulation in [*Twombly*, 550 U.S. at 562–63]." *Jones v. Horne*, 634 F.3d 588, 596 n.4 (D.C. Cir. 2011).

extra-pleading material submitted, the parties' access to sources of proof, and the parties' concomitant opportunity to present evidence in support or opposition to summary judgment. *See id.*; *see also, e.g.*, *White v. Vilsack*, No. 11-1763, 2012 WL 3715394, at *5 (D.D.C. Aug. 29, 2012) (declining to convert to summary judgment because "the current record is not sufficiently developed to allow a determination as to whether a genuine dispute of material fact exists"). If a non-moving party is able to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to summary judgment, a court may defer consideration of the motion; deny the motion; or permit the non-moving party time to take discovery or obtain other extra-pleading material in opposition to summary judgment. *See* FED. R. CIV. P. 56(d).

### C. Title VII Retaliation

"Title VII's anti-retaliation provision makes it unlawful for an employer 'to discriminate against [an] employee . . . because he has opposed any practice' made unlawful by Title VII or 'has made a charge, testified, assisted, or participated in' a Title VII proceeding." *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008) (quoting 42 U.S.C. § 2000e-3(a)). The Court assesses Title VII retaliation claims under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). First, the plaintiff must prove a *prima facie* case of retaliation: "(1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (internal quotation marks omitted). If the *prima facie* case is made, the "burden shifts to the defendant to prove that 'the adverse employment actions were taken for a legitimate, nondiscriminatory reason.'" *Youssef v. FBI*, 687 F.3d 397, 402 (D.C. Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). "[A] plaintiff alleging retaliation faces a low burden at the motion to

dismiss stage and is not required to show that defendant's proffered reasons for its actions are pretext." *Munro v. LaHood*, 839 F. Supp. 2d 354, 364 (D.D.C. 2012).

Notably, at the motion-to-dismiss stage, a Title VII plaintiff is not generally required to plead facts that specifically rebut a defendant's legitimate, nondiscriminatory reasons or establish discrimination *vel non*. Under the *McDonnell Douglas* burden-shifting framework:

> After the employer offers a non-discriminatory justification for its actions, the *McDonnell Douglas* framework falls away, and [the court] must determine whether a reasonable jury "could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff."

*Vickers v. Powell*, 493 F.3d 186, 195 (D.C. Cir. 2007) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998)); *accord Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009). In other words, once an employer produces a legitimate, nondiscriminatory reason for its action, "the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *U.S. Postal Serv. Bd. of Governors v. Aiken*, 460 U.S. 711, 714 (1983)). The *McDonnell Douglas* framework, however, "function[s] as a means of 'arranging the presentation of *evidence*,'" not as a pleading standard. *See Hicks*, 509 U.S. at 510 n.3 (emphasis added) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988)); *see also McDonnell Douglas*, 411 U.S. at 800 ("The critical issue before us concerns the order and allocation of *proof* in a private, non-class action challenging employment discrimination." (emphasis added)). The Supreme Court has made clear that, at the motion-to-dismiss stage, the question "[is] 'not whether [the plaintiff] will ultimately prevail,' . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation omitted) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Furthermore, since discovery may reveal direct evidence of discrimination, it

7

would be "incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits." *Swierkiewicz*, 534 U.S. at 511–12; *see also Twombly*, 550 U.S. at 547 (rejecting the claim that the opinion's "analysis runs counter to *Swierkiewicz*"). The *Twombly/Iqbal* pleading standard only requires a complaint to "state a *facially* plausible claim," *Rudder*, 666 F.3d at 790 (emphasis added) (citing *Iqbal*, 556 U.S. at 662), and does not require plaintiffs to anticipate defenses or justifications presented to meet the plaintiff's *prima facie* allegations.

### III.   DISCUSSION

#### A.   The Court Will Not Convert the Defendant's Motion to Dismiss into a Motion for Summary Judgment.

In urging for dismissal of this case, the defendant makes a number of arguments, many of which focus on a summary judgment standard. *See, e.g.*, Def.'s Mem. in Supp. Mot. to Dismiss or in the Alternative for Summ. J. ("Def.'s Mem.") at 23–32, ECF No. 8. "As the Supreme Court and this Circuit have repeatedly held, summary judgment is ordinarily appropriate only after the plaintiff has been given an adequate opportunity to conduct discovery." *McWay v. LaHood*, 269 F.R.D. 35, 39 (D.D.C. 2010); *accord Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986))); *Americable Int'l v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) ("[S]ummary judgment ordinarily 'is proper only after the plaintiff has been given adequate time for discovery.'" (quoting *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988))). The exercise of discretion under Rule 12(d) to convert a motion to dismiss to a motion for summary judgment is usually only appropriate where (1) the evidence submitted is sufficiently comprehensive to conclude that further discovery would be unnecessary; and (2) the

non-moving party has not been unfairly disadvantaged by being unable to access the sources of proof necessary to create a genuine issue of material fact. *See, e.g.*, Fed. R. Civ. P. 12(d) ("All parties must be given a reasonable opportunity to present all material that is pertinent to the motion."); *Tele-Commc'ns of Key West*, 757 F.2d at 1334 (requiring court to "assure itself that summary judgment treatment would be fair to both parties" before converting motion to dismiss to motion for summary judgment); WRIGHT & MILLER § 1366 (noting the importance of having "comprehensive" extra-pleading evidence to convert to summary judgment, as opposed to "scanty, incomplete, or inconclusive" evidence).

The plaintiff in this case has, in fact, requested discovery before consideration of summary judgment because her "ability to prove pretext is heavily dependent upon witness testimony, credibility issues and other evidence requiring discovery." *See, e.g.*, Pl.'s Opp'n at 11. Furthermore, the plaintiff has submitted a sworn declaration, which states that "there is a myriad of relevant and discoverable documents that have not been obtained by the Plaintiff" that "would be necessary in order for Plaintiff to adequately and fully respond to Defendant's Motion." Rule 56(f) Aff. in Supp. Pl.'s Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. ("Pl.'s Rule 56(f) Aff.") ¶ 3, ECF No. 13-2.[3] The plaintiff goes on to list a variety of matters that will require further discovery before the issue of discrimination *vel non* will be ripe for consideration through a motion for summary judgment. *See id.* ¶¶ 4–13. In light of the materials submitted by the plaintiff, the Court agrees that the plaintiff has not had a "reasonable opportunity to present all material that is pertinent" to the issue of pretext, *see* FED. R. CIV. P. 12(d), since the plaintiff in the instant action has had no opportunity for discovery

---

[3] The plaintiff states that she submits this affidavit "pursuant to Fed. R. Civ. P. 56(f)," *see* Pl.'s Rule 56(f) Aff. ¶ 1, however, the Federal Rules of Civil Procedure were amended in 2010, and as a part of those amendments the provisions formerly contained in Rule 56(f) were moved to current Rule 56(d). *See* FED. R. CIV. P. 56 advisory committee's note (2010 Amendments).

beyond the administrative process, *see* Pl.'s Rule 56(f) Aff. ¶ 2.  Therefore, the Court will not consider any "matters outside the pleadings" and thereby will not convert the defendant's motion to dismiss into a motion for summary judgment.  *See* FED. R. CIV. P. 12(d); *accord Smith v. De Novo Legal LLC*, No. 12-296, 2012 WL 5873679, at *4 (D.D.C. Nov. 21, 2012) (denying motion to dismiss retaliation claim before discovery had occurred, finding that whether defendant "had a legitimate, non-discriminatory reason . . . is a fact-sensitive inquiry that can only be undertaken after discovery has run its course"); *Blue v. Jackson*, 860 F. Supp. 2d 67, 78 (D.D.C. 2012) (denying defendant's motion for summary judgment without prejudice, finding summary judgment "premature . . . before [the plaintiff] has been afforded any opportunity to develop facts to support his argument of pretext"); *Gray v. Universal Serv. Admin. Co.*, 581 F. Supp. 2d 47, 57 (D.D.C. 2008) ("[L]itigants in discrimination cases are 'entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's *proof* leads to windy complaints and defeats the function of Rule 8.'" (quoting *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998))).

In support of the motion to dismiss, the defendant makes two arguments.  First, the defendant argues that "Plaintiff was not subjected to an adverse employment action."  Def.'s Mem. at 2.  Second, the defendant argues that "Plaintiff does not allege and cannot show the existence of a causal nexus between any of the alleged retaliatory actions and her prior EEO activity."  *Id.* at 27.  Neither of these arguments, however, warrants dismissal of the plaintiff's Complaint.

### B. <u>The Plaintiff Has Alleged an Adverse Employment Action.</u>

As discussed above, being subjected to an adverse employment action is an essential element of a retaliation claim under Title VII.  *See, e.g.*, *Hamilton*, 666 F.3d at 1357.  The defendant argues that the plaintiff has failed to plead an adverse employment action in the instant

case "because her employment was never terminated. Rather, as an employee working on a temporary, short-term operation, she was placed on intermittent status once the workload had decreased as anticipated." *See* Def.'s Mem. at 23. The defendant goes on to argue that "written within the very terms and conditions of employment was the possibility that employees like Plaintiff may be placed on intermittent status or released based on the needs of the Agency." *Id.* at 23–24. The plaintiff opposes this argument by contending that it "is a red herring that proves nothing" because the plaintiff's "status is essentially no different than any other at-will employee or federal government worker." Pl.'s Opp'n at 24.

Title VII's anti-retaliation provision "sweeps more broadly" than its substantive anti-discrimination provision. *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010); *see also Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (noting that "the concept of adverse action is somewhat broader" in retaliation claims); *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008) ("'Adverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim."). "[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). This is because "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace." *Id.* at 63. Instead, the anti-retaliation provision "prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011) (quoting *Burlington Northern*, 548 U.S. at 68).

In light of Supreme Court's standard for adverse employment actions in retaliation claims, set forth in *Burlington Northern*, the Court notes at the outset that the defendant has invoked the wrong standard in arguing that the plaintiff failed to allege an adverse employment action in this case. The defendant relies principally on the standard articulated in *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999). In *Brown*, the D.C. Circuit held that, in order to allege an adverse employment action for purposes of a Title VII retaliation claim, a plaintiff must allege some action that results in "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities." *Brown*, 199 F.3d at 457. In *Burlington Northern*, however, "the [Supreme] Court expressly rejected [this] standard for retaliation claims." *See Steele*, 535 F.3d at 695. Therefore, the defendant's reliance on *Brown* is mistaken.

Furthermore, the defendant's contention—that notice to the plaintiff of "the possibility that employees like Plaintiff may be placed on intermittent status or released based on the needs of the Agency" precludes the existence of an adverse employment action—is out of touch with basic principles of employment law. *See* Def.'s Mem. at 24. The defendant's argument in this regard is premised on the fact that the possibility of being converted to intermittent status was "written within the very terms and conditions of employment" and therefore "Plaintiff agreed to this condition of employment prior to accepting the position." *Id.* at 23–24. The fallacy in this argument is that, just because the defendant indisputably retained the *power* to place an employee on intermittent status says nothing of whether such an action was *adverse* within the meaning of Title VII's anti-retaliation provision. The defendant is essentially advocating for some kind of "assumption of the risk" defense to employment discrimination claims, whereby an employer could fire employees for impermissible reasons and then be immune from subsequent

12

Title VII claims so long as the employer first notified its employees that they could be fired. *See, e.g.*, Def.'s Reply in Supp. Mot. to Dismiss or in the Alternative Mot. for Summ. J. ("Def.'s Reply") at 5, ECF No. 15-1 (arguing that the plaintiff "was acutely aware of the inevitability that her appointment would conclude at any time and would not be made permanent or converted to an at-will position"); *id.* at 10 ("Plaintiff knowingly and voluntarily signed two documents that put her on notice that her appointment may not last until the [Not to Exceed] date and her work schedule could change at any time."). This novel legal argument runs completely contrary to the purposes of Title VII and the long line of cases interpreting that statute, and thus the Court rejects it *ab initio*.

The plaintiff's employment status in this case was undisputedly temporary, but merely because the plaintiff was a temporary employee does not mean that placing her on intermittent status, prior to the Not to Exceed ("NTE") date specified in her employment agreement, was not an adverse employment action.[4] Rather, there can be no doubt that placing the plaintiff on intermittent status, which the plaintiff claims changed her "from being a full-time employee with benefits to a non-paid employee with no benefits and no work," Compl. ¶ 29, was an adverse employment action. The plaintiff is correct to characterize such an action as the "effective[] terminat[ion]" of her employment, *see id.*, and the D.C. Circuit and other courts have long held that termination and its functional equivalents are the quintessential examples of adverse employment actions under Title VII. *See, e.g.*, *Douglas v. Donovan*, 559 F.3d 549, 554 (D.C. Cir. 2009) (calling "termination" an "obvious" adverse employment action); *see also Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1019 & n.8 (8th Cir. 2005) (holding that Title VII

---

[4] This conclusion could potentially be different if a temporary employee were placed on intermittent status *on* the NTE date, since an NTE date is essentially a predetermined end date for the temporary employment term. The Court need not reach this question, however, since it is undisputed that the plaintiff in the instant action was placed on intermittent status approximately two months prior to her NTE date.

plaintiff satisfied *prima facie* case where she "was effectively terminated . . . when she was told that her position had been eliminated"). Indeed, even "the *temporary* deprivation of wages counts as materially adverse action" for purposes of a Title VII retaliation claim. *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (emphasis added). The defendant is therefore badly misguided in attempting to argue that entirely eliminating the plaintiff's position (including her salary and benefits) would not be an adverse employment action. The Court concludes that the plaintiff's factual allegations regarding her placement on intermittent status are sufficient to qualify as an adverse employment action for purposes of her Title VII retaliation claim.

### C. The Plaintiff Has Adequately Pleaded a Causal Connection Between Her Protected Activity and the Alleged Adverse Employment Action.

The defendant also contends, *see* Def.'s Mem. at 27–29, that the plaintiff has failed to allege that "there was a causal link between the protected activity and the adverse action," *see Hamilton*, 666 F.3d at 1357. In support of this argument, the defendant makes three related points. First, the defendant contends that too much time elapsed between the plaintiff's protected activity and the adverse employment action for a causal link to be established. *See* Def.'s Mem. at 27–28. Second, the defendant argues that "downsizing was already being considered by Census Bureau Headquarters before the Plaintiff's EEO contact," which the defendant says further severs any potential causal link. *See id.* at 28. Finally, the defendant argues that the plaintiff has failed to allege "that either Mr. Roman or Mr. Armstrong knew about her previous protected activity at the time of the decision to convert her employment status," and thus there could not have been any causal connection. *Id.* at 27.

As to the defendant's first point regarding the amount of time that elapsed between the protected activity and the adverse employment action, the D.C. Circuit has held that "a close temporal relationship may alone establish the required causal connection," *Singletary v. District*

*of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003), though the word "close" has defied any precise definition. "Although the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation," the D.C. Circuit has recognized that "neither the Supreme Court nor [the D.C. Circuit] has established a bright-line three month rule." *Hamilton*, 666 F.3d at 1357–58. In the instant case, the plaintiff alleges that she first made contact with the EEO on March 23, 2010, she filed a formal complaint with the EEO on April 26, 2010, and the EEO accepted her claims on June 11, 2010. *See* Compl. ¶¶ 17, 25. Additionally, the plaintiff alleges that she was notified of the adverse employment action on July 7, 2010, and the change in her employment status became effective July 30, 2010. *See id.* ¶ 25. In evaluating "whether evidence of temporal proximity satisfies the causation element," courts are to consider not just a plaintiff's initial statutorily protected activity but also "later protected activity." *Hamilton*, 666 F.3d at 1358. Measuring from the time the plaintiff allegedly submitted her formal complaint, the period between her protected activity and the decision to convert her to intermittent status was just under two and one half months. That relatively short amount of time has recently been held by the D.C. Circuit to be sufficiently "close" to establish temporal proximity at the motion-to-dismiss stage, *see id.* at 1358–59, and therefore the Court concludes that the plaintiff's allegations in this case are sufficient to establish a "close temporal relationship," *see Singletary*, 351 F.3d at 525.

The defendant's other two arguments are likewise unavailing at the motion-to-dismiss stage. First, the D.C. Circuit has held that a plaintiff is not required to allege that a specific supervisor had knowledge of protected activity to plead a *prima facie* case of retaliation. *See Hamilton*, 666 F.3d at 1358 ("The [defendant] claims that [the plaintiff] failed to show that [the

15

supervisor who took the adverse employment action] knew of [the plaintiff's] complaint, but at the prima facie stage the fact that [the plaintiff] submitted the complaint to the agency is sufficient."). Regardless, the plaintiff has alleged that Messrs. Armstrong and Roman were aware of her protected activity before they decided to convert her employment status, *see* Compl. ¶ 56, and the defendant admits as much in its opening brief, *see* Def.'s Mem. at 8.

Second, the defendant's argument that the agency had decided to convert the plaintiff to intermittent status before she made contact with the EEO raises a factual question, not a deficiency in the plaintiff's pleading, and therefore it cannot be a basis for dismissing the plaintiff's Complaint at this stage of the litigation. *See, e.g.*, *Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 723 (D.C. Cir. 2007) (observing that "a factual question . . . is not properly resolved at the motion-to-dismiss stage when all reasonable inferences must be drawn to the plaintiff's benefit"); *see also supra* Part III.A (declining to convert motion to dismiss into motion for summary judgment). Furthermore, the plaintiff's Complaint alleges facts that, if proven, would call the defendant's legitimate, nondiscriminatory explanations into question. Most notably, the plaintiff alleges that Messrs. Armstrong and Roman placed her on a staff retention list on June 3, 2010, indicating that she would be retained "through at least September 2010." *See* Compl. ¶ 18. Additionally, the plaintiff alleges that, not only was she assigned to work on the "labor intensive" IPCD project on June 15, 2010 (less than a month before being notified of her conversion to intermittent status), but she also alleges that "Mr. Roman and Mr. Armstrong actually extended the appointment of other Partnership Coordinators and IPCD project staff beyond the initial two (2) year term." *Id.* ¶ 27. These factual allegations persuade the Court that the plaintiff's theory of pretext is

"plausible on its face," and therefore the allegations are sufficient to survive a motion to dismiss. *See Twombly*, 550 U.S. at 570.[5]

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that the plaintiff has adequately pleaded a *prima facie* Title VII retaliation claim, and therefore the defendant's motion to dismiss the Complaint is denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: February 13, 2013

                                       /s/ *Beryl A. Howell*
                                       BERYL A. HOWELL
                                       United States District Judge

---

[5] The plaintiff's factual allegations further indicate that converting the defendant's motion to dismiss into a motion for summary judgment would be inappropriate because the evidence submitted by the defendant is not sufficiently comprehensive to conclude that further discovery would be unnecessary to decide the question of discrimination *vel non*. *See supra* Part III.A (discussing when it is appropriate to convert motion to dismiss into motion for summary judgment). The plaintiff must be given a "reasonable opportunity" to present evidence in support of her factual allegations regarding pretext before the Court can appropriately decide any motion for summary judgment premised on the plaintiff's failure to prove pretext. *See* FED. R. CIV. P. 12(d).